IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHALINI KOLLURI, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:20-CV-02897-N |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICE, | § § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Plaintiffs' motions for preliminary injunction [13], [17], and Plaintiffs' motion for expedited discovery [14]. For the reasons set forth below, the Court denies Plaintiffs' motion for a preliminary injunction and motion to expedite discovery.

**I. ORIGINS OF THE DISPUTE**

Plaintiffs are H-4 applicants and visa holders who have sued the United States Citizenship and Immigration Service ("USCIS") for unlawful delay in adjudicating applications necessary to work in the United States. Plaintiffs' complaint raises two claims under the Administrative Procedure Act ("APA"). The first claim challenges USCIS's prohibition on automatic extension of H-4 employment authorization documents ("EADs"). The second claim is an unreasonable delay claim under the APA based on two theories. *See* Pls.' Mot for Expedited Disc. 3 [15-1]. The first theory alleges that the USCIS took actions in bad faith to slow down adjudication of EADs for H-4 visa holders. Specifically, USCIS currently adjudicates applications sequentially rather than

MEMORANDUM OPINION AND ORDER – PAGE 1

concurrently and implemented a biometrics requirement, which requires H-4 applicants to appear at the nearest application support center and provide biometric information. Plaintiffs argue that these two actions are bad faith efforts to create delays that are per se unreasonable. The second theory challenges the adjudicatory delays under the factors set forth in *Telecomm. Research & Action Ctr. v. F.C.C.* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984). Plaintiffs seek a mandatory injunction ordering USCIS to "adjudicate plaintiffs' pending H-4 extension and work authorization renewals within 7 days of the Court's order." Pls.' Mots. for Prelim. Inj. [13], [17].

## II.  H-4 VISAS REGULATORY BACKGROUND

The Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, regulates the admission of foreign nationals into the United States, including the temporary admission of nonimmigrants for specific purposes. Domestic employers who seek to hire foreign nationals for specialty occupations must apply and secure for these potential employees an H1-B visa. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(B). An H1-B visa holder's spouse may receive derivative immigration status under an H-4 visa. The validity period of an H-4 visa is dependent upon the length of the attendant H-1B visa. *See* 8 C.F.R. § 214.2(h)(9)(iv). For H-4 visa holders to apply for or extend their visa status, they must file an Application to Extend/Change Nonimmigrant Status (Form I-539) to USCIS no earlier than six months before the holder's visa is set to expire.

Without a separate work authorization, H-4 visa holders may live, but not work, in the United States. In 2015, USCIS modified existing regulations to allow H-4 visa holders to apply for work authorization if their spouse, the H-1B visa holder, has shown an intent

MEMORANDUM OPINION AND ORDER – PAGE 2

to stay in the United States and to become a legal permanent resident. *See* Employment Authorization for Certain H-4 Dependent Spouses, 80 Fed. Reg. 10,284, 10,285 (proposed Feb. 25, 2015) (to be codified at 8 C.F.R. §§ 214, 274a); *see also* 8 C.F.R. §§ 214.2(h)(9)(iv), 274a.12(c)(26). To request employment authorization, an eligible H-4 visa holder must file an Application for Employment Authorization (Form I-765) complying with 8 C.F.R. § 247a.13 and provide documentary evidence that establishes, among other criteria, the H-4 applicant's eligibility, the applicant's spousal relationship with the H-1B visa holder, and the eligibility of the H-1B visa holder. *See* 8 C.F.R. § 214.2(H)(9)(iv).

Under existing USCIS regulations, an H-1B worker's employment authorization continues while the worker's timely application for an extension of stay is pending adjudication. *See* 8 C.F.R. § 274a.12(b)(20). Should the underlying visa expire before USCIS adjudicates the extension petition, the H1-B visa holder enjoys an automatic extension of work authorization for a maximum of 240 days. *See id.* By contrast, USCIS has determined that H-4 visa holders are not entitled to automatic extensions of work authorizations while Form I-539 status renewals are being adjudicated. *See* Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers, 81 Fed. Reg. 82,398, 82,460 (Nov. 18, 2016) (to be codified at 8 C.F.R. §§ 204, 205, 214, 245, 274a) [hereinafter Second Notice of Final Rulemaking]. Thus, under existing USCIS regulations, H-4 visa holders may experience gaps in employment authorization, even as their H-1B spouses may continue working pending adjudication of their applications for an extension of stay.

MEMORANDUM OPINION AND ORDER – PAGE 3

As of March 2019, all applicants applying for H-4 visas must appear at the application support center closest to the applicant's residence and provide biometric information. *See* 8 C.F.R. § 103.2(b)(9). However, USCIS paused providing in-person services as of March 18, 2020, until beginning phased reopening July 13, 2020. This temporary closure created a backlog in biometrics appointments. Because H-4 applications cannot be adjudicated until a biometrics appointment and EADs cannot be adjudicated until H-4 applications are adjudicated, the temporary closure created a backlog in adjudications for EADs.

### III. PRELIMINARY INJUNCTION LEGAL STANDARD

The decision to grant or deny a preliminary injunction lies within the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). A preliminary injunction is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion. *Harris Cty. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir. 1999). To obtain a preliminary injunction, the movant must establish the following: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the preliminary injunction is denied; (3) that the potential injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the preliminary injunction will not disserve the public interest. *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003). The first factor is also the "most important factor." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). "[M]andatory preliminary relief . . .

'which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.'" *Three Expo Events, L.L.C. v. City of Dallas*, 182 F. Supp. 3d 614, 622 (N.D. Tex. 2016) (quoting *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).

### III. THE COURT DENIES PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

#### A. *Mootness and Venue*

As a preliminary matter, the Court addresses Defendant's mootness and venue arguments. Defendant argues that, of the 314 Plaintiffs in this action, only 7 appear to reside within the Northern District of Texas and thus, venue is improper. Furthermore, Defendant claims that numerous of Plaintiffs' applications have been adjudicated, rendering their claims moot and depriving the Court of subject matter jurisdiction.

The Court agrees that the claims of Plaintiffs whose work authorizations have been adjudicated are moot for the purpose of a preliminary injunction. Thus, the Court does not consider those claims for the purposes of the preliminary injunction motion.

Defendant additionally argues that the Northern District of Texas is an improper venue for most Plaintiffs. The Court disagrees. Venue is governed by 28 U.S.C. § 1391. Under this section, "venue is proper as to all plaintiffs if suit is brought in a district where any one or more of the plaintiffs resides." *Crane v. Napolitano*, 920 F. Supp. 2d 724, 746 (N.D. Tex. 2013) (citations omitted). "For over thirty years federal courts have conclusively and consistently held that the statutory language in 28 U.S.C. § 1391(e)(3) regarding the residency of 'the plaintiff' should be interpreted to mean *any* plaintiff rather than *all* plaintiffs." *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1301 (N.D. Ala.

MEMORANDUM OPINION AND ORDER – PAGE 5

2003) (emphasis in original).  Here, USCIS has admitted that 7 plaintiffs reside within the Northern District of Texas.  Thus, venue is proper.

### B.  *Unlawfulness Claim*

The APA permits courts to "hold unlawful and set aside agency action[s]" found to be "arbitrary" and "capricious."  5 U.S.C. § 706(2).  "Agency action" includes an agency's interpretation of its own regulations.  *See Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 698 (D.C. Cir. 1971).  Federal courts defer to an agency's interpretation of its own regulation if its reading is reasonable, the interpretation represents the agency's authoritative or official position, rather than a mere ad hoc statement, the agency's interpretation implicates its substantive expertise, and it reflects fair and considered judgment.  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–17 (2019).  If these criteria are met, the agency has "significant leeway to say what its own rules mean." *Id.* at 2418.  "Judicial deference to the Executive Branch is especially appropriate in the immigration context . . . ." *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).  However, "the possibility of deference can only arise if a regulation is genuinely ambiguous." *Kisor*, 139 S. Ct. at 2414.  If a regulation's plain text is clear, "uncertainty does not exist, . . . . The regulation then just means what it means—and the court must give it effect . . . ." *Id.* at 2415.

At issue is 8 C.F.R. § 274a.13(d), which governs the automatic extension of EADs.[1]  Under this regulation, "EADs for certain nonimmigrant workers are automatically

---

[1] (d) Renewal application—

MEMORANDUM OPINION AND ORDER – PAGE 6

extended for 180 days if the EAD holder submits an application for renewal before the EAD's expiration . . . ." *Nibber v. U.S. Citizenship & Immigration Servs.*, No. CV 20-3207 (BAH), 2020 WL 7360215, at *2 n.1 (D.D.C. Dec. 15, 2020). Plaintiffs claim that USCIS's interpretation of section 274a.13(d) to deprive H-4 EAD renewal applicants of their 180-day automatic extension constitutes an arbitrary and capricious final agency action. The Court disagrees. The plain reading of the regulations shows that Plaintiffs do not qualify for an automatic extension of their work authorization. As the court in *Ray* noted, "a work authorization renewal petitioner is eligible for an automatic extension where they

---

(1) Automatic extension of Employment Authorization Documents. Except as otherwise provided in this chapter or by law, notwithstanding 8 CFR § 274a.14(a)(1)(i), the validity period of an expiring Employment Authorization Document (Form I–766) and, for aliens who are not employment authorized incident to status, also the attendant employment authorization, will be automatically extended for an additional period not to exceed 180 days from the date of such document's and such employment authorization's expiration if a request for renewal on a form designated by USCIS is:
(i) Properly filed as provided by form instructions before the expiration date shown on the fact of the Employment Authorization Document, or during the filing period described in the applicable Federal Register notice regarding procedures for obtaining Temporary Protected Status-related EADs;
(ii) Based on the same employment authorization category as shown on the face of the expiring Employment Authorization Document or is for an individual approved for Temporary Protected Status whose EAD was issued pursuant to 8 CFR § 274a.12(c)(19); and
(iii) Based on a class of aliens whose eligibility to apply for employment authorization continues notwithstanding expiration of the Employment Authorization Document and is based on an employment authorization category that does not require adjudication of an underlying application or petition before adjudication of the renewal application, including aliens described in 8 CFR § 274a.12(a)(12) granted Temporary Protected Status and pending applicants for Temporary Protected Status who are issued an EAD under 8 CFR § 274a.12(c)(19), as may be announced on the USCIS Web site.
.

MEMORANDUM OPINION AND ORDER – PAGE 7

belong to a 'class of aliens whose eligibility to apply for employment authorization continues notwithstanding expiration of the [EAD] *and is based on an employment authorization category that does not require adjudication of an underlying application or petition before adjudication of the renewal application . . . .*'" *Ray v. Cuccinelli*, No. 20-CV-6279-JSC, 2020 WL 6462398, at *5 (N.D. Cal. Nov. 3, 2020) (emphasis and alteration in original) (citing 8 C.F.R. § 274a.13(d)(1)(iii)). "For H-4 visa holders, the EAD renewal petition requires adjudication of two applications before the petitioner is eligible for renewal of the EAD: the spouse's H1-B renewal petition and the H-4 visa renewal." *Id.*; *see also* Second Notice of Final Rulemaking, 81 Fed. Reg. 82,398, 82,460 ("Thus, before adjudicating a Form I-765 filed by the H-4 nonimmigrant spouse, USCIS must first make a determination on the principal's H-1B status, because the spouse derives his or her status from the principal. USCIS must then adjudicate the H-4 nonimmigrant spouse's application for an extension of stay."). Thus, H-4 visa holders do not fall within the "class of aliens whose eligibility . . . is based on an employment authorization category that does not require adjudication of an underlying application . . . ." 8 C.F.R. § 274a.13(d)(1)(iii).

Plaintiffs argue that an automatic extension of employment authorization does not require adjudication of underlying petitions because H-1B and H-4 visa holders' lawful immigration status automatically extends while a petition is pending. In other words, Plaintiffs argue that H-4 EAD renewal petitions are merely extensions of a benefit attached to the previous, approved H-4 and H-1B applications and thus do not rely on the adjudication of the pending petition. However, the relevant regulatory scheme expressly

MEMORANDUM OPINION AND ORDER – PAGE 8

states that "H-4 nonimmigrant status does not confer eligibility for employment authorization incident to status." 8 C.F.R. § 214.2(h)(9)(iv). Even if the H-4 nonimmigrant retains lawful status, eligibility for employment authorization does not necessarily continue for the same duration. *See Ray*, 2020 WL 6462398, at *5.

A plain reading of the regulations shows that Plaintiffs do not qualify for an automatic extension of their EADs; the Court thus determines that USCIS's interpretation is not arbitrary and capricious. Because Plaintiffs have not established that their unlawfulness claim is likely to succeed on its merits, the Court denies Plaintiffs' motion for preliminary injunction as to their unlawfulness claim.

### B.  Unreasonable Delay

The APA requires an administrative agency to act upon matters presented to it "within a reasonable time," 5 U.S.C. § 555(b), and provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). Although it is well established that the APA does not provide an independent basis for jurisdiction, *Califano v. Sanders*, 430 U.S. 99 (1977), the APA's command that an agency process matters within a reasonable time, combined with 28 U.S.C. § 1331, creates a presumption of federal question jurisdiction. *See Yu v. Brown*, 36 F. Supp. 2d 922, 929 (D.N.M. 1999). Plaintiffs' unreasonable delay claim under the APA is based on two theories. *See* Pls.' Mot for Expedited Disc. 3 [15-1]. The first theory alleges that the USCIS took actions in bad faith to slow down adjudication of EADs for H-4 visa holders, and any resulting delays are thus per se unreasonable. The second theory challenges the

adjudicatory delays under the factors set forth in *TRAC*, 750 F.2d 70, 80 (D.C. Cir. 1984). Because bad faith is one of the *TRAC* factors, the Court will discuss both theories together.

*TRAC*, 750 F.2d 70 (D.C. Cir. 1984), sets out various factors used in determining whether an agency's delay is unreasonable under the APA. These include:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* at 79–80 (citations omitted). Both parties agree that the *TRAC* factors apply to unreasonable delay claims under the APA. The Court notes that "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Ahmadi v. Chertoff*, 522 F. Supp. 2d 816, 822 (N.D. Tex. 2007). Application of the *TRAC* factors may turn on the particularized facts of the hundreds of Plaintiffs in this case. However, the Court addresses the *TRAC* factors for the purposes of the preliminary injunctive relief requested.[2]

---

[2] The Court notes that it is not the first to consider the issue of H-4 EAD delays under the *TRAC* factors. *See, e.g.*, *Verma, v. U.S. Citizenship and Immigration Servs.*, No. CV 20-3419 (RDM), 2020 WL 7495286, at *6 (D.D.C. Dec. 18, 2020); *Ray*, 2020 WL 6462398, at *9 (N.D. Cal. Nov. 3, 2020); *Muvvala v. Wolf*, No. 1:20-CV-02423 (CJN), 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020). Plaintiffs' counsel has filed scores of nearly identical cases across the country alleging unreasonable delay in processing work authorizations for H-4 visa holders. *See* Def.'s Resp. 7 n.3 [22]. Thus far, courts have

      ***1. Rule of Reason and Timetable.*** – The first two *TRAC* factors relate to the time agencies take to make decisions and whether such timetable has been provided by Congress. Here, USCIS alleges that Congress has not provided a timetable for H-4 EAD adjudication and that USCIS generally adjudicates applications on a first-in, first-out basis, with a select few applications being expedited to criteria set forth by the agency. Plaintiffs argue that USCIS failed to provide support for this proposition, and that USCIS does not actually adjudicate cases in chronological order. Plaintiffs point to the fact that the agency has adjudicated nearly 10% of the delays in this case out of chronological order. However, as noted by USCIS, applications may be expedited under various criteria, and the fraction of delays that are out of chronological order are insufficient to establish that the USCIS does not apply a first-in, first-out rule of reason. The Court agrees with the case law in which federal courts have held that USCIS operates under a first-in, first-out method of adjudication that constitutes a "rule of reason" and satisfies the first *TRAC* factor. *See, e.g.*, *Ray*, 2020 WL 6462398, at *9. Thus, the first *TRAC* factor weighs in favor of USCIS.

      The second *TRAC* factor considers whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *In re Core Commc'ns*, 531 F.3d at 855. Section 1571 does not establish a "mandatory timeline" regarding the adjudication of H-4 status and EAD renewal petitions. *See* 8 U.S.C. § 1571; *Ray v. Cuccinelli*, 2020 WL 6462398, at *8. "Congress has not provided a specific timetable by which USCIS must process applications to extend H-4

---

generally denied Plaintiffs' motions for preliminary injunction and to expedite discovery. *See, e.g.*, *Ray*, 2020 WL 6462398.

MEMORANDUM OPINION AND ORDER – PAGE 11

status or renew EADs." *Muvvala v. Wolf*, 2020 5748104, at *3 (D.D.C. Sept. 25, 2020). Nonetheless, section 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days . . . except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition." 8 U.S.C. § 1571(b). Although some courts have noted that this preamble may be "precatory" or "non-binding," *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 n.26 (D.C. Cir. 2015), the second *TRAC* factor requires only some "indication of the speed with which [Congress] expects the agency to proceed." *See TRAC*, 750 F.2d at 80. Thus, although Congress did not mandate a timetable, it expressed some indication of the timeline in which USCIS should operate. *See Verma*, 2020 WL 7495286, at *7. Nonetheless, the Court declines to adopt Plaintiffs' claim that "[a]ny delay beyond 180 days should be presumptively, and *per se* unreasonable." Doing so would "transmogrify an aspiration into a deadline." *Chuttani v. United States Citizenship & Immigration Servs.*, No. 3:19-CV-02955-X, 2020 WL 7225995, at *3 (N.D. Tex. Dec. 8, 2020). Moreover, the Court has found no authority suggesting that time alone can establish unreasonable delay. To the contrary, courts have held that unreasonable delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed unlawful." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 115 (D.D.C. 2005) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). Here, the Court cannot definitively say whether the second *TRAC* factor weighs in favor of either party. Plaintiffs filed their applications at different times, and while some Plaintiffs have

MEMORANDUM OPINION AND ORDER – PAGE 12

waited over six months, others have not. While the second *TRAC* factor weighs in favor of Plaintiffs who have waited over six months, this "does not carry as much weight as would a statutory deadline." *Verma*, 2020 WL 7495286, at *7.

    **2. *Human Health and Prejudice.*** – The third factor is closely related with the fifth factor. These factors consider "whether a delay is 'less tolerable' because 'human health and welfare are at stake' and 'the nature and extent of the interests prejudiced by delay.'" *Id.* (citing *In re Core Commc'ns*, 531 F.3d at 855). Although USCIS argues that Plaintiffs' interests do not "rise to a level that would significantly change the assessment of unreasonableness," *Liberty Fund*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005), the Court disagrees. In *Liberty Fund*, the court was confronted with delays in adjudicating applications for permanent labor certifications. The impact on human welfare was "not of a sufficient magnitude," particularly when the alleged impact consisted of relatively minor harms such as an inability "to locate an able, willing and qualified U.S." child-monitor or "potential ineligibility for promotion." *Id.* at 119. Here, delays in work authorization result in the complete loss of Plaintiffs' ability to support themselves and their families, including their children. Plaintiffs are unable to renew their driver's licenses and may lose health insurance as a result of unemployment. The Court determines that the third and fifth *TRAC* factors weigh in Plaintiffs' favor.

    **3. *Effect of Expedited Adjudication.*** – Factor four requires the Court to consider the effect that expedited adjudication has on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. This factor weighs strongly in favor of USCIS. If the Court grants Plaintiffs' requested relief, a judicial order putting Plaintiffs at the head of the

MEMORANDUM OPINION AND ORDER – PAGE 13

queue simply moves all others back one space and produces no net gain. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (citing *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Although Plaintiffs attempt to differentiate *Mashpee* based on the relatively short time needed to adjudicate H-4 EADs, the Court is not convinced. The core issue in granting relief is not the relative ease in which USCIS might be able to expedite Plaintiffs' applications, but the ensuing inequity for other applicants who must wait longer. Any time saved by Plaintiffs is necessarily lost by other applicants, and further inefficiencies are added into the system when the Court compels USCIS to move applicants in the queue. Because granting Plaintiffs relief only harms other applicants, the Court determines that the fourth *TRAC* factor weighs in USCIS's favor. *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020).

  **4. Bad Faith.** – Finally, factor six assesses the "bad faith" of the agency's decisions. "A delay that is a result of bad faith—that is, a delay for improper reasons—is a delay that is *per se* unreasonable . . . ." *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 231 (E.D.N.Y. 2006). Plaintiffs argue that two of USCIS's decisions, namely, the decision to impose a biometric requirement and the decision to adjudicate applications sequentially, were implemented in bad faith and any resulting delays are thus per se unreasonable. "To find that an agency acted in bad faith, however, a party must present evidence 'of bad faith or impropriety driving the delay in adjudication' of the relevant applications." *Ray*, 2020 WL 6462398, at *11 (collecting cases).

  In support of its proposition that USCIS acted in bad faith, Plaintiffs aver that USCIS already possesses Plaintiffs' biometric information and that USCIS implemented

MEMORANDUM OPINION AND ORDER – PAGE 14

sequential adjudication based on improper and inaccurate information from organizations seeking to discourage lawful immigration. Moreover, Plaintiffs allege that USCIS has waived biometric requirements for other benefits, but not for H-4 visa holders.

At this stage in the litigation, the Court has little evidence that USCIS acted in bad faith. While Plaintiffs are correct in stating that circumstantial evidence may prove their case, a preliminary injunction is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion. *Harris Cty. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir. 1999). The limited circumstantial evidence, namely a potentially redundant biometrics requirement and the timing of a meeting with Immigration Reform Law Institute, is a far cry from "facts and law clearly favor[ing] the moving party," particularly for a preliminary injunction. *Three Expo Events*, 182 F. Supp. 3d at 622 (quoting *Martinez*, 544 F.2d at 1243). Thus, the Court determines that Plaintiffs have not met their burden in establishing bad faith.

On balance, the Court finds that Plaintiffs have not shown a likelihood of success on the merits of their unreasonable delay claim. Here, Plaintiffs are not merely asking the Court to maintain the status quo through a preliminary injunction, but actively to compel USCIS to place Plaintiffs at the front of the queue. Although Plaintiffs have demonstrated that "human health and welfare are at stake," the bulk of the *TRAC* factors weighs in favor of USCIS. Because Plaintiffs have failed to meet their burden in showing that their claims are likely to succeed on their merits, the "most important factor," *Aamer*, 742 F.3d at 1038, the Court denies Plaintiffs' motion for a preliminary injunction.

### IV. THE COURT DENIES PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

While the Federal Rules of Civil Procedure do not provide a rule for expedited discovery, the Fifth Circuit has adopted a "good cause" standard to determine whether expedited discovery is appropriate. *See U.S. Commodity Futures Trading Comm'n v. M25 Investments, Inc.*, No. 3:09-CV-1831-M, 2009 WL 3740627, at *1 (N.D. Tex. Sept. 29, 2009); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011). "Courts commonly consider the following factors in determining whether 'good cause' exists to order expedited discovery: '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *St. Louis Grp., Inc.*, 275 F.R.D. at 241 n.4 (quoting *In re Fannie Mae Derivative Litigation*, 227 F.R.D. 142, 143 (D.D.C. 2005)).

Plaintiffs seek expedited discovery in the form of 5 interrogatories, 5 requests for production, and a potential Rule 30(b)(6) deposition from an unidentified deponent. Plaintiffs seek information regarding the composition of the Senior Policy Council at USCIS allegedly responsible for making the decisions to impose biometric requirements and to adjudicate H-4 status and work authorizations sequentially. Plaintiffs seek additional information regarding the documents relied upon in making these decisions, communications about these decisions, and the rationales for making these decisions.

The Court determines that Plaintiffs have not shown good cause and thus denies Plaintiffs' motion for expedited discovery. The scope of Plaintiffs' discovery requests is

broad and reaching, and the Court declines to permit Plaintiffs the extraordinary remedy of expedited discovery based on mere speculation into USCIS's bad faith implementation of its policies. Thus far, Plaintiffs have only presented evidence that USCIS imposed a biometrics requirement and adjudicates applications sequentially, and that these decisions delayed the adjudication process. This alone does not demonstrate good cause, particularly in light of the Court's determination that Plaintiffs are unlikely to succeed on the merits. Moreover, because the Court has already denied Plaintiffs' motion for preliminary injunction, there is no good reason to expedite discovery. Thus, the Court denies Plaintiffs' motion for expedited discovery.

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiffs' motion for a preliminary injunction and motion for expedited discovery.

Signed January 17, 2021.

_____
David C. Godbey
United States District Judge